UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRADLEY A. ESTABROOK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO.: 1:16-CV-87-TLS ) |
| MAZAK CORPORATION, | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Defendant Mazak Corporation's Motion to Dismiss [ECF No. 37], filed on November 10, 2016. Plaintiff Bradley A. Estabrook filed a Second Amended Complaint [ECF No. 35] on October 27, 2016. The Defendant moves to dismiss pursuant to Rule 12(b)(6), asserting that the Second Amended Complaint fails to state a claim upon which relief can be granted. On November 30, 2016, the Plaintiff filed his Opposition [ECF No. 43] to the Defendant's Motion. The Defendant's Reply [ECF No. 46] was entered December 10, 2016. For the reasons stated below, the Court denies the Motion.

**BACKGROUND**

The Plaintiff is a resident of Indiana who works as a Maintenance Engineer at General Products, an Indiana company that provides parts for the automotive industry. (Second Am. Compl. ¶¶ 1, 7–8, ECF No. 35.) "As a Maintenance Engineer . . . , [the Plaintiff] was charged with, among other things, troubleshooting and repairing Computer Numerical Control ("CNC") machines." (*Id.* ¶ 9.) Approximately ten of the CNC machines at General Products are Mazak FH6800 CHC machines, which are manufactured by the Defendant, a New York corporation. (*Id.* ¶¶ 3, 10.) General Products also has a Mazak Flexible Manufacturing System ("FMS") "that

interacts/interfaces with each FH6800 by loading and unloading pallets by way of a conveyor system that has a track that goes down the line alongside each FH6800." (*Id.* ¶ 10.)

According to the Second Amended Complaint, the Defendant "design[ed], research[ed], manufacture[d], test[ed], advertise[ed], promote[d], market[ed], s[old], distribute[d], and install[ed] the Mazak FH6800 and Mazak FMS that are the subject of" this lawsuit. (*Id.* ¶¶ 11.)[1] The machines were installed prior to September 5, 2006, which is when the Plaintiff began working for General Products. (*Id.* ¶ 12.) Further, the Defendant "designed the layout and customization" of its Mazak FH6800 machines "for their installation and use at General Products" by creating "a gap along the bottom of the loading doors of the machine so that it could connect to, and interface with the Mazak FMS." (*Id.* ¶ 13.)[2]

General Products and the Defendant had a service contract for "servicing, repairing, rebuilding, reconstructing, reconditioning, and/or maintenance of the Mazak machines" at the manufacturing plant. (*Id.* ¶ 14.) "In total, [the Defendant] serviced . . . the Mazak machines that are the subject of this lawsuit no less than 15 times between . . . September 5, 2006, and November of 2014." (*Id.* ¶ 15.) In October of 2014, an employee of the Defendant "serviced, repaired, or rebuilt the Mazak FH6800, Control Number M640M, Serial Number 165025, because of a problem with the machine not properly rotating the pallets." (*Id.* ¶ 16.)

On November 11, 2014, the Plaintiff and a coworker were working inside that same Mazak FH6800 machine to conduct additional repairs, as it "was still experiencing problems

---

[1] The Plaintiff also alleged that Yamazaki, a Japanese corporation and "the parent corporation of [the Defendant]," was also responsible for the "design, research, manufacture, test[ing], advertis[ing], promot[ion], market[ing], sell[ing], distriubt[ion], and install[ation]" of the machines at issue in this case. (*Id.* ¶¶ 2, 11.) Yamazaki was voluntarily dismissed from this case on April 20, 2017, so the Plaintiff proceeds against the Defendant alone.

[2] The parties did not provide any visual aids or video demonstrations as to how the Defendant's machines work. While they may have been illuminating, they were not necessary for the Court to rule on this Motion.

2

with . . . not properly rotating pallets." (*Id.* ¶ 17.) The Plaintiff "followed the lock-out tag-out procedures" on the Mazak FH6800 that he was repairing. (*Id.* ¶ 18.) However, the "adjacent/connected Mazak FMS was not subject to any lock-out tag-out procedures and was still operational" even though the two were "inside the Mazak FH6800 performing repairs." (*Id.* ¶ 19.) While conducting repairs, the Plaintiff dropped an Allen Wrench, bent down to pick it up, happened to slide his foot under an opening in the machine, "and an automatic robot from the Mazak FMS sheared off and crushed his right leg below the knee." (*Id.* ¶ 20.)[3] The Plaintiff was airlifted to the hospital "and underwent multiple surgeries with a hospitalization lasting 19 days," "has required extensive physical rehabilitation and ongoing pain management," and "may have to have his right leg amputated." (*Id.* ¶ 22.)

In the Second Amended Complaint, the Plaintiff asserted state tort law claims against the Defendant for negligence and for violations of the Indiana Products Liability Act ("IPLA"), Ind. Code § 34-20-1-1, due to defective design and failure to warn. The parties completed briefing the Defendant's Motion to Dismiss on December 10, 2016. Also on that date, the Defendant filed a Motion for Hearing [ECF No. 47] regarding its Motion to Dismiss and the technology at issue in this case. After this case was transferred to this Court, the Defendant's Motion for Hearing was denied. [*See* ECF No. 63.]

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in

---

[3] The Defendant subsequently repaired the Mazak FH6800 machine with Control Number M640M, Serial Number 165025, between November and December of 2014. (*Id.* ¶ 23.)

3

the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly* at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. Determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Id.* at 679.

## ANALYSIS

This Court has jurisdiction over the Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy is satisfied. The Defendant moves to dismiss the Second Amended Complaint for failure to state a claim under the IPLA on the grounds that it had no duty to implement lock-out tag-out procedures required by the Indiana Occupational Safety and Health Act ("IOSHA"), and because the third count for negligence is subsumed by the first two counts of defective design and failure to warn. The Plaintiff argues that the Defendant misunderstands the Second Amended Complaint, which alleged liability for defectively designing the combined FH6800 and FMS product and failing to warn about the dangers inherent to that product, not for failing to set up lock-out tag-out procedures. As to the third count, the Plaintiff states that the Defendant breached its duty in its post-installation repairs, rebuilds, and reconstructions at General Products.

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citations omitted). Whether the Plaintiff can assert a product liability claim is a matter of Indiana state law. The IPLA governs all actions that are: "(1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. Neither party disputes that the IPLA governs the Plaintiff's claims for defective design and failure to warn.

To establish a prima facie case of liability under the IPLA, "the plaintiff must show that (1) the product is defective and unreasonably dangerous, (2) the defective condition existed at the time the product left the defendant's control, and (3) the defective condition is the proximate

5

cause of the plaintiff's injuries." *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 160 (Ind. Ct. App. 1997). A product may be defective within the meaning of the IPLA because of a manufacturing flaw, a design defect, or a failure to warn of the dangers associated with the product's use. *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319 (Ind. Ct. App. 2009). For claims based on a design defect or a failure to warn, a plaintiff must establish that the manufacturer failed to exercise reasonable care under the circumstances. *Id.*

Counts I, II, and III are claims framed in terms of strict liability and negligence. In them, the Plaintiff claims that, while working on the Mazak FH6800, he suffered damages because the Defendant "rebuilt, reconstructed, or reconditioned" the Mazak FH6800 and Mazak FMS, "which had the effect of lengthening the useful life of the machines beyond what was contemplated," and "incorporated a defective component or otherwise caused a defective condition to exist subsequent to its sale." (Second Am. Compl. ¶ 35.) While the Defendant is correct that the IPLA subsumes both strict liability and negligence actions, *see Gardner v. Tristar Sporting Arms, Ltd.*, No. 1:09-CV-0671, 2010 WL 3724190, at *2 (S.D. Ind. Sept. 15, 2010), dismissal is improper here. First, when viewing the allegations in a light most favorable to the non-movant, the Plaintiff has satisfied the general pleading standards by stating a plausible claim for relief—namely, that he suffered physical harm due to the Defendant's defective product. Moreover, the Plaintiff specifically alleges that the product was defective due to a design defect[4] and a failure to warn[5]—claims that are all recognized under the IPLA. *See In re*

---

[4] Specifically, the Plaintiff alleges that the defect arose when the Defendant "alter[ed] the FH6800 by removing a guard and/or panel or creat[ed] a gap along the bottom of the FH 6800 so that it could connect to, and interface with the Mazak FMS" and "design[ed] the layout/customization of its machines . . . in such a way that an employee working on a machine that is subject to lock-out tag-out protocol sustains injury from a machine that is still operational." (Second Am. Compl. ¶¶ 56a–56b.)

[5] Specifically, the Plaintiff alleges that the Defendant failed to warn by "failing to have adequate equipment specific instructions for the FH6800 and Mazak FMS once the two machines were interfaced with each other." (*Id.* ¶ 56c.)

6

*Lawrence W. Inlow Accident Litig.*, No. IP 99-0830, 2002 WL 970403, at *12 (S.D. Ind. Apr. 16, 2002) (stating that the IPLA governs all actions "for physical harm brought by a consumer against a manufacturer or seller of a product, regardless of the substantive legal theory") (quoting *Chesnut v. Roof*, 665 N.E.2d 7, 10 (Ind. Ct. App. 1996)). Accordingly, the Plaintiff's strict liability and negligence claims are properly treated as merged claims under the IPLA. *See Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1024 (N.D. Ind. 2011); *Cincinnati Ins. Cos. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 4:05-CV-49, 2006 WL 299064, at *3 (N.D. Ind. Feb. 7, 2006); *Bourne v. Marty Gilman, Inc.*, No. 1:03-CV-1375, 2005 WL 1703201, at *3 n.2 (S.D. Ind. July 20, 2005).[6]

In its briefing, the Defendant focused on the fact that it had no duty to implement lock-out tag-out procedure to prevent the Plaintiff's injury. Under the IOSHA, "employer[s] shall establish and maintain conditions of work which are reasonably safe and healthful for employees, and free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees." Ind. Code § 22-8-1.1-2. An employer complies by following "occupational health and safety standards promulgated," which include lock-out tag-out procedures on certain workplace machines. *Id.* § 22-8-1.1-3.1. General Products was the Plaintiff's employer, and thus needed to follow these IOSHA procedures. As such, the Defendant argues, "[i]f the Plaintiff was injured after entering the FH6800 because the FMS was not subject to lock-out tag-out procedures . . . then dismissal is warranted." (Reply 3, ECF No. 46.) But at the motion to dismiss stage, the Court is not tasked with resolving these factual questions, such as the proximate cause of the Plaintiff's injury or whether a manufacturer failed to exercise

---

[6] To the extent the Defendant seeks dismissal of the third claim in the Second Amended Complaint because it raises a post-sale theory of liability, that theory was subsumed into a single claim under the IPLA. The Court need not separately consider the merits of that theory at this stage of the proceedings.

reasonable care. All the Court must decide is whether there are enough facts to put the Defendant on reasonable notice as to the nature of the Plaintiff's claims and to allow the Court "to draw the reasonable inference that the [D]efendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (2009) (citation omitted). The Court finds that the Second Amended Complaint does just that.

## CONCLUSION

For the reasons stated above, Defendant Mazak Corporation's Motion to Dismiss [ECF No. 35] is DENIED.

SO ORDERED on May 17, 2017.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT