UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRADLEY A. ESTABROOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:16-CV-87-HAB |
| | ) | |
| MAZAK CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

On March 2, 2020, the Indiana Supreme Court dealt Plaintiff's case a considerable blow. Responding to this Court's certified question, that court concluded that the Indiana Product Liability Act ("IPLA"), Indiana Code § 34-20-3-1, contains a ten-year statute of repose "that cannot be extended by a manufacturer's post-delivery repair, refurbishment, or reconstruction of the disputed product." *Estabrook v. Mazak Corp.*, 740 N.E.3d 830, 836–37 (Ind. 2020). With both parties agreeing that the allegedly defective product in this case was delivered more than ten years prior to Plaintiff's injury, the Indiana Supreme Court's decision appeared to be decisive.

However, like two Monty Python-scripted knights, the parties now argue over the severity of the blow. Plaintiff recognizes the setback but claims that it is just a flesh wound, leaving claims under Section 324A of the Restatement (Second) of Torts intact. Defendant asserts that the legs have been cut out from all Plaintiff's claims and has declared its victory. The task now falls to this Court to determine which of the combatants is correct.[1]

---

[1] Defendant also filed a motion to strike certain statements offered by Plaintiff in opposition to Defendant's motion for summary judgment (ECF No. 136). Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies Defendant's Motion to Strike. The Court has noted Defendant's objections and will consider the objections to the extent they arise in the Court's summary judgment analysis.

**A.      Factual Background**

This matter involves a horrific workplace accident that occurred on November 7, 2014. At the time of the accident, Plaintiff was employed as a maintenance technician by General Products Corporation ("GPC"), an auto parts manufacturer located in Angola, Indiana. Defendant is a wholly owned subsidiary of a Japanese manufacturer (Yamazaki Mazak Corporation) of Computer Numerically Controlled ("CNC") machinery. It appears, at least with respect to the machinery at issue, that Defendant acted as the U.S.-based sales and installation service for machinery that was manufactured in Japan.

The machinery involved in this case is Defendant's Palletech System, a "high-productivity unmanned system" for loading and stocking pallets of manufactured goods. At GPC, the Palletech System was comprised of seven CNC machines, model number FH6800 (the "FH6800s"), sharing a common pallet loader robot that traveled on a rail system between the FH6800s. Installation of the system was completed on July 24, 2003, and was performed entirely by Defendant's employees. The total cost to GPC for the Palletech System was approximately $3.4 million.

The alleged defect in this case is a gap that is located at the front end of each of the FH8600s. The gap is located at the bottom of the loader doors and its purpose is to allow a forklift to "come in underneath the pallet and pick the pallet up." Stated another way, the gap allowed access to pallets on the loader robot as it stopped at each FH8600 via the rail system. While the gap was useful from an access standpoint, when the loader robot passed by it also created a potential "pinch point." GPC's employees, including Plaintiff, were generally aware of the possibility of a pinch point at the location of the gap but never gave it much thought.

---

Both parties also filed motions seeking to submit additional materials in support of their summary judgment filings. (ECF Nos. 134, 137). There being no objection to either motion, they are granted.

Beginning in summer 2014, GPC experienced problems with Machine 5, one of the FH8600s in the Palletech System. Both GPC and Defendant made several attempts at fixing the issue through the summer and fall. Plaintiff's work on November 7, 2014, was part of these ongoing attempts. Although power to Machine 5 was cut off during Plaintiff's work, the pallet loader robot continued to travel back and forth on the rail system to service the other FH8600s. This was an advertised feature of the Palletech System – the system was designed to continue operating even if one of the CNC machines was inoperable.

While Plaintiff was working inside of Machine 5, he dropped a wrench he was using for the repairs. As he bent over to retrieve the wrench, his right foot inadvertently went through the gap at the bottom of the loader door on Machine 5. At the same moment the pallet loader robot passed by on the rail system, catching Plaintiff's foot. The damage to Plaintiff's foot was significant, as the foot was nearly sheared off above the ankle. As a result, Plaintiff has undergone several surgeries, the most recent of which was an ankle fusion on January 25, 2017. The only remaining medical option is the amputation of the foot above the ankle. Plaintiff is not expected to work again.

It is undisputed that Defendant serviced the Palletech System and Machine 5 on multiple occasions prior to Plaintiff's accident. It is further undisputed that Defendant never corrected the pinch-point-creating gap, nor did it warn Plaintiff or any other employee of GPC of the danger posed by the gap.

**B.      Procedural History**

Defendant's instant motion for summary judgment is not the first dispositive motion in this case; far from it. Defendant filed three[2] motions to dismiss under Rule 12(b)(6), the most relevant

---

[2] This does not include the motion to dismiss filed by former Defendant Yamazaki Mazak Corporation. (ECF No. 53).

of which is the third (ECF No. 37). Among the issues raised by Defendant was its assertion that Plaintiff's negligence claims in Count III of his second amended complaint "alleges the same design defect and failure to warn under the IPLA" and therefore was "subsumed by Plaintiff's IPLA claims." (ECF No. 38 at 5). This is, essentially, the same assertion made by Defendant now.

Plaintiff responded directly to the IPLA argument in its response in opposition (ECF No. 43). Quoting from the response:

> To say that "Count III should be dismissed to the extent it is subsumed by Plaintiff's IPLA claims" says nothing at all. It is akin to saying the claims should be dismissed to the extent they are "unsupported by evidence" or "contrary to law." Mazak's one paragraph argument about "subsumed claims" gives the Court little guidance as to what is to be dismissed and what is to remain. If discovery reveals that some of the negligence allegations truly are encompassed by and subsumed within the product liability claims, the concern can be addressed by judgment or, more likely, by narrowing of the issues for a pre-trial order and crafting of jury instructions. To embark on Mazak's suggested journey, at this stage of the litigation and with only four sentences of guidance from Mazak's cursory argument, is to take an unnecessary and ill-planned adventure.

(*Id*. at 8–9). Plaintiff did not challenge the idea that his negligence claims *could* be subsumed into his IPLA claims, but merely asked the Court to defer ruling on the issue to a later date.

The Court did not accept Plaintiff's invitation to delay. Instead, Judge Springmann concluded that all Plaintiff's claims were "properly treated as merged claims under the IPLA." (ECF No. 64 at 7). Specifically addressing the issue of a "post-sale theory of liability," the kind of claim Estabrook advances now, Judge Springmann stated that it "was subsumed into a single claim under the IPLA." (*Id*. n.6). The net effect of Judge Springmann's ruling was clear: Plaintiff's case could go forward, but it would do so as a single claim under the IPLA.

By all accounts, the parties understood that Plaintiff had only an IPLA claim when this case was originally presented for summary judgment. Defendant's summary judgment filing, which sought "summary judgment in its favor and [to] dismiss the entirety of Estabrook's claims,"

4

addressed only a claim under the IPLA. (*See*, *generally*, ECF No. 81). At no point in his response does Plaintiff argue that Defendant's motion for summary judgment should be denied because he has stated a claim outside of the IPLA. (ECF No. 86). Rather, Plaintiff devotes the entirety of his response to contesting the validity of Defendant's IPLA defenses, most notably the statute of repose. (*Id*.). The singular focus on the IPLA led this Court to certify "the determinative question in this case," i.e., the statute of repose, to the Indiana Supreme Court. (ECF No. 114 at 2). Neither party objected to certification on the grounds that the statute of repose was not determinative of the case. It was not until after the Indiana Supreme Court determined that the IPLA's statute of repose could not be extended, thus extinguishing Plaintiff's IPLA claim, that Plaintiff's negligence claim reemerged.

**C.    Legal Analysis**

**1.    *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs*., 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp*., 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**2.**     ***Plaintiff's Arguments are Contrary to the Law of the Case***

The thrust of Plaintiff's argument in opposition to summary judgment can be found on page 1 of his response. Plaintiff concedes that Counts I and II of his Second Amended Complaint are gone in the wake of the Indiana Supreme Court's decision. (ECF No. 103 at 3). However Plaintiff "does not concede this negligent service claim under Count III and maintains that it is not subsumed by the IPLA and that it should survive summary judgment because a jury could reasonably conclude that Mazak breached its duty under section 324A of the Restatement (Second) of Torts and that breach of duty was the responsible cause of his injury." (*Id*.). The Court views this as an attempt to rehash issues that have been long since decided, issues that the Court is not inclined to revisit.

The law-of-the-case doctrine generally provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011). The doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," but it does not "limit [courts'] power."

*Messenger v. Anderson*, 225 U.S. 436, 444 (1912). Accordingly, the doctrine "does not apply if the court is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (internal quotations omitted) (alteration in original). However, absent unusual circumstances like new evidence or case law, "the doctrine should be applied." *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988).

As an initial matter, the Court concludes that Judge Springmann's ruling at Docket No. 64 constitutes the law of the case with respect to the breadth of Plaintiff's claims. Only those matters that were decided constitute the law of the case. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998). "[O]bservations or commentary touching upon issues not formally before the . . . court," i.e., dicta, "do not constitute binding determinations." *Id*. Here, the issue of whether Plaintiff had a non-IPLA cause of action was squarely before the Court when Judge Springmann made her ruling. Defendant had raised the issue, (ECF No. 38 at 5), and Plaintiff responded (ECF No. 43 at 8–9). Judge Springmann's finding, then, that all Plaintiff's claims were "properly treated as merged claims under the IPLA" (ECF No. 64 at 7) was not dicta but was instead actually decided by the Court. Her finding, then, should bind the parties going forward in the absence of unusual circumstances.

Plaintiff identifies no such circumstances. In fact, Plaintiff does not even recognize that Judge Springmann has already passed on the very issue presented in his summary judgment response. Plaintiff simply responds to the IPLA-preemption argument as if it is novel when, as set forth above, it is not.

There is no question that Plaintiff has more fully briefed the IPLA/negligence issue in opposition to Defendant's instant motion for summary judgment than he did in opposition to

7

Defendant's earlier motions to dismiss. However, this "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). The fact that Plaintiff elected to hold off on presenting the Restatement argument as a strategic matter, out of prior inadvertence, or because it was developed only after the Indiana Supreme Court's ruling is irrelevant. Plaintiff could have presented the current Restatement argument when Defendant first asserted that his negligence claim was subsumed by the IPLA more than three years ago. He did not and the Court sees no reason to permit this new argument now.

As all parties recognize, the Indiana Supreme Court's decision rang the death knell for any claim in this case premised on the IPLA. Since Judge Springmann concluded that ***all*** Plaintiff's claims were premised on the IPLA, ***all*** Plaintiff's claims are legal non-starters. Accordingly, summary judgment in Defendant's favor is appropriate.

**3.      *Plaintiff has no § 324A Claim Outside of the IPLA***

The Court's conclusion that the law of the case precludes Plaintiff's argument is bolstered by its conclusion that Judge Springmann's decision was correct. While the Court can conceive of circumstances where a § 324A claims exists outside of and separate from the IPLA, this case does not present those circumstances. Instead, no matter how Plaintiff's claims are structured, presented, or re-imagined, his claims relate entirely to a condition in the Palletech System that existed when it was designed and manufactured. They are IPLA claims resolved by the decision of the Indiana Supreme Court.

The parties agree that the IPLA governs all product liability actions in Indiana regardless of the substantive legal theory. I.C. § 34-20-1-1; *Robinson v. Davol Inc.*, 913 F.3d 690, 693 (7th

Cir. 2019). Nonetheless, Plaintiff asserts that Defendant's post-sale conduct gives rise to a cause of action outside of the IPLA, specifically one under the Restatement (Second) of Torts, § 324A. This section of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A; *Neal v. iAB Fin. Bank*, 68 N.E.3d 1114, 1118–19 (Ind. Ct. App. 2017). Plaintiff does not identify which subsection of Restatement is applicable here, but he does contend that he "has designated evidence raising a genuine issue of material fact precluding summary judgment with respect to the duty owed by Mazak in its performance of post-sale service work at GPC and Mazak's breach of that duty." (ECF No. 130 at 12).

Plaintiff relies principally on two cases in support of the validity of his Restatement claim. The first is *Schamel v. Textron-Lycoming, a Div. of Avco Corp.*, 1 F.3d 655 (7th Cir. 1993). The holding of *Schamel* does not support Plaintiff's position[3] but Plaintiff seizes upon a single sentence in support of his assertion that a § 324A claim can exist outside of the IPLA:

> It may be that a § 324A action is not a products liability suit for purposes of the Indiana Products Liability Act, since it may be that, under Indiana Law [sic], the injury does not result from the manufacture, construction or design of a product, but rather from the voluntarily undertaken post-sale negligent acts. *See Baker v. Midland–Ross Corp.*, 508 N.E.2d 32 (Ind. App. 1987) (permitting suit against manufacturer for post-sale negligence pursuant to § 324A even though accident occurred sixteen years after sale).

---

[3] The Seventh Circuit expressly did not rule on the validity of a § 324A claim, stating "[w]e need not address that issue, however, because the plaintiff has not alleged a § 324A action." *Schamel*, 1 F.3d at 657.

9

*Id*. at 657.

The Court agrees with Plaintiff that *Schamel* suggests the availability of the very claim he advances now. However, *Schamel*, by citing to *Baker*, sets forth the outlines of such a claim. Therefore, it is necessary to examine *Baker* to determine the scope of the claim envisioned by *Schamel*.

The plaintiff in *Baker* was seriously burned following the failure of a furnace manufactured and serviced by the defendant. The failure was caused by a modification to the furnace made by the plaintiff's employer. The plaintiff sued the defendant, alleging both strict liability under the IPLA and negligence. At the conclusion of the trial, the plaintiff tendered an instruction premised on § 324A which would have permitted the jury to find liability based upon the defendant's failure to "point out any unreasonable dangers respecting" the furnace and its failure to "warn or point out such unreasonably dangerous condition." *Baker*, 508 N.E.2d at 34. The trial court rejected the instruction and the jury found in favor of the defendant.

The plaintiff appealed the rejection of its § 324A instruction. The Indiana Court of Appeals reversed, but its decision does not address any kind of interplay between the IPLA and § 324A. Instead, the decision was premised upon Indiana Trial Rule 15(B), dealing with amendments to conform to the evidence. *Id*. at 35–37. The Court of Appeals concluded that "[s]ince the issue of post-sale negligence was tried by implied consent, the trial court committed reversible error when it refused the plaintiffs' tendered instruction on that issue." *Id*. at 37.

The factual basis for the Court of Appeals' finding was its conclusion that "the plaintiffs elicited a plethora of evidence at trial, without objection, which was relevant only to the issue of post-sale negligence, not strict liability." *Id*. at 36. That evidence, as set out in the opinion, dealt with the defendant's ability to observe the modification and warn of the dangers it posed. *Id*. at

36–37. Thus, at least in *Baker*, the existence of an independent § 324A claim was premised entirely on a condition that was not present when the subject product was put into the stream of commerce. This is consistent with other cases the Court has found where a negligence claim was considered outside of the context of an IPLA claim; in each, the defendant's conduct dealt with the alleged defect specifically rather than the product generally. *See*, *e.g.*, *Medtronic, Inc. v. Malander*, 996 N.E.2d 412 (Ind. Ct. App. 2013) (genuine issue of material fact where manufacturer specifically advised decedent's surgeon not to remove defecting defibrillator leads); *Steele v. Maren Eng'g. Corp.*, 460 F. Supp. 2d 877 (S.D. Ind. 2005) (no duty to warn of defect in safety mechanism added after product was purchased).

Whatever merit the foregoing cases have after the Indiana Supreme Court's decision in this case, they do not speak to Defendant's conduct. There is no evidence in the record that Defendant was ever asked to, or did, perform any service on the gap at the bottom of the loader door on Machine 5, or that Defendant was consulted regarding the safety issues posed by the gap. Instead, Defendant performed repair work on the Palletech System generally, and repaired a cylinder within Machine 5 unrelated to the gap. (*See* ECF No. 114 at 5–6). Without some evidence that the gap was in a different condition from when it left Defendant to enter the stream of commerce, or some evidence that Defendant specifically set out to address potential issues with the gap, Plaintiff's case law is inapposite.

The Court finds the facts of this case to be far more comparable to *Miller ex rel. Miller v. Honeywell Intern., Inc.*, 2002 WL 31399793 (S.D. Ind. Oct. 15, 2002), a case cited by Defendant. There, plaintiff's decedent was killed when a set of planetary gears in an Army helicopter failed, causing a fatal crash. The plaintiff filed suit against the manufacturer of the gears alleging design defects and negligence arising out of an alleged post-sale duty to warn. The plaintiff's claims under

11

the IPLA were dismissed as barred by the statute of repose, putting the plaintiff in *Miller* in the same procedural position as Plaintiff is here.

Further echoing the case at bar, the defendant in *Miller* sought summary judgment on the failure to warn claim, arguing that it was part and parcel of the IPLA claim. Relying on *Shamel*, the Southern District expressed doubt that a § 324A claim could exist separate from an IPLA claim where it is premised on a failure to warn of a condition that existed when the product was manufactured.

> Furthermore, the Court doubts that, under the circumstances of this case, the Plaintiffs can establish the existence of a § 324A duty to warn that is independent from their product liability claim. No matter how the Plaintiffs attempt to recast it, the alleged failure to warn refers to a defect which already existed at the time the product was manufactured. The essence of the Plaintiffs' complaint is that the carrier assembly was designed and manufactured improperly, not that the product suffered damage during use which the service provider negligently failed to detect or repair.

*Miller*, 2002 WL 31399793 at *14. While the court in *Miller* ultimately ruled in the defendant's favor on different grounds, its reasoning is directly applicable here.

Just as in *Miller*, the Court finds that the *sine qua non* of Plaintiff's claim is a defect that existed at the time the Palletech System and Machine 5 were manufactured. Plaintiff's claim is that those products were designed and manufactured improperly to include the injury-causing gap, not that Defendant damaged those products during service or that Defendant negligently failed to detect or repair the gap. Plaintiff's claim is one under the IPLA, no matter how he wishes to describe it.

Since Plaintiff's negligence claim cannot be extracted from his IPLA claim, it must suffer the same fate. The Palletech system was installed in 2003. Under the Indiana Supreme Court's decision in this case, any claim related to its design and manufacture had to be brought within ten

years of that date. This lawsuit was not initiated until 2016. The whole of Plaintiff's claim is untimely, requiring the entry of judgment in favor of Defendant.

**D.      Conclusion**

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment is GRANTED. Defendant's Motion to Strike (ECF No. 136) is DENIED. Defendant's Motion to Consider Supplement Exhibits (ECF No. 134) and Plaintiff's Motion for Leave to File the Declaration of John Lindenschmidt (ECF No. 137) are GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on July 14, 2020.

                                     s/ *Holly A. Brady*
                                     JUDGE HOLLY A. BRADY
                                     UNITED STATES DISTRICT COURT